# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 12, 2014 Session

## SARAH KEE, ET AL. V. CITY OF JACKSON, TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C07326     Nathan B. Pride, Judge**

---

**No. W2013-02754-COA-R3-CV - Filed March 30, 2015**

---

Action under the Tennessee Governmental Tort Liability Act against the City of Jackson to recover for injuries sustained in a fall suffered by one plaintiff while she and her husband were walking across a bridge from a parking lot to the fairgrounds operated by the City. Following a bench trial, the court held that the bridge was in a defective and dangerous condition and that the City was not immune from suit; the court determined that the City was 60% negligent and the plaintiff 40% negligent.  The court assessed damages at $62,817.35 for plaintiff wife and $8,400.00 for plaintiff husband; applying the comparative fault percentage, the court awarded plaintiff wife $37,690.41 and plaintiff husband $5,040.00. We modify the award of damages to plaintiffs; in all other respects we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Modified and Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P. J., W. S., and W. MICHAEL MALOAN, SP., J., joined.

John Dean Burleson and Matthew Robert Courtner, Jackson, Tennessee, for the appellant, City of Jackson, Tennessee.

David Wayne Camp, Jackson, Tennessee, for the appellees, Sarah Kee and Larry Kee.

## OPINION

This action arises from a fall suffered by Ms. Sarah Kee on October 7, 2006, while she and her husband were attending a flea market which was taking place at the fairgrounds operated by the City of Jackson.  The Kees had parked in an overflow parking lot and were

crossing a bridge from the parking area to the fairgrounds when Ms. Kee tripped and fell. The Kees brought suit under the Governmental Tort Liability Act ("GTLA"), alleging that the city breached its duty to inspect and maintain the bridge, thereby causing a dangerous or defective condition which caused Ms. Kee to fall and sustain her injuries.

Following a trial, the court held that the City was not immune from suit; it determined that the City was 60% negligent and the plaintiffs 40% negligent. The court subsequently held a hearing on damages and assessed damages at $62,817.35 for Ms. Kee and $8,400.00 for Mr. Kee; applying the comparative fault percentage, the court entered judgment in favor of Ms. Kee in the amount of $37,690.41 and in favor of Mr. Kee for $5,040.00. The City appeals, contending that the court erred in determining that the city's immunity was removed, the City did not owe a duty to the Kees, that the Kees failed to prove causation, that Ms. Kee was at least 50% at fault, and that the court erred in its award of damages for Ms. Kee's medical treatment.

## I. STANDARD OF REVIEW

Because this case was tried without a jury, our review of the trial court's findings of fact is *de novo*, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. See Tenn. R. App. P. 13(d); *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006). Our review of the trial court's determinations regarding questions of law is *de novo* with no presumption of correctness. *Kaplan*. 188 S.W.3d at 635.

## II. DISCUSSION

### A. REMOVAL OF GOVERNMENTAL IMMUNITY

Tenn. Code Ann. § 29-20-201(a) sets forth the general rule of governmental immunity: "Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Latter statutes remove immunity for negligent operation of motor vehicles (Tenn. Code Ann. § 29-20-202), unsafe streets and highways (Tenn. Code Ann. § 29-20-203), dangerous structures (Tenn. Code Ann. § 29-20-204), and negligent acts of employees (Tenn. Code Ann. § 29-20-205).

The trial court held that the city's immunity was removed pursuant to Tenn. Code Ann. § 29-20-204 which states:

(a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.

(b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302.

In its ruling the court stated:

> The Court finds, from the testimony of the City employees, that the bridge was not inspected on a regular basis. Repairs to the bridge were done only when someone reported a problem with the bridge. Inspections were done on a random basis when one of the employees drove a "Gator" across the bridge or an employee walked across the bridge. That person would look down to see if there were any problems with the bridge.
>
> After studying the case law submitted by the parties and its own independent research, this Court has concluded that the City of Jackson is not immune from suit under these circumstances. The bridge as depicted in the pictures on October 9, 2006 is in a clearly defective and dangerous condition. Tenn. Code Ann. § 29-20-204. This Court has concluded that the City of Jackson failed to adequately inspect the bridge that it owned and controlled. Thus, the Plaintiffs have met the burden of proving constructive notice.

As an initial matter, we address the City's contention that, even if its immunity is not removed, it is not liable because the Kees cannot identify what caused Ms. Kee to fall and,

3

consequently, cannot show the necessary element of causation.[1] In this regard, the trial court wrote:

> Plaintiff Sarah Kee admitted that she does not know the exact cause of her fall. She stated that she was walking across the bridge when she felt her foot hit something and fell like a tree. The left shoe admitted as Exhibit 3 clearly shows a scuff mark or nail mark on the bottom, surface of the shoe.
>
> Plaintiff Larry Kee testified that he was with his wife when she fell. He also did not see what caused her to fall, but testified that she fell forward and caught herself with her hands. . . . Mr. Kee further testified that he returned to the bridge on October 9, 2006 and took various photographs presented to the court as Exhibits 1 and 2. The pictures clearly show a broken rotten runner on the bridge along with nails sticking up in more than one place. The pictures further show that the planks were not even and that gaps exist between the boards in various places on the bridge. Mr. Kee testified that some of the nails were protruding by about three quarters of an inch.

We have reviewed the testimony of the Kees, and the employees and representatives of the City, along with the numerous photographs[2]; applying the standard of review at Tenn. R. Civ.

---

[1] The elements of a premises liability action under the GTLA were set forth in *Traylor ex rel. Traylor v. Shelby Cty. Bd. Of Educ.* as follows:

> In a premises liability action against a governmental entity, the plaintiff must prove that: (1) the governmental entity owns and controls the location or instrumentality alleged to have caused the injury; (2) a dangerous, defective, or, in the case of sidewalks, unsafe condition caused the injury; (3) the governmental entity had actual or constructive notice of the dangerous condition; and (4) the governmental entity breached either its duty to eliminate the condition or its duty to warn of the condition.

*Traylor*, No. W2013-00836-COA-R3-CV, 2014 WL 792131, at *8 (Tenn. Ct. App. Feb. 27, 2014), (internal citations omitted).

[2] The shoe which was introduced as Exhibit 3 was not included in the record on appeal; we have, however, reviewed Ms. Kee's testimony with respect to the left shoe and the marks appearing thereon.

P. 13(d),[3] the evidence does not preponderate against the determinations that the bridge was in a dangerous and defective condition, and that the condition caused Ms. Kee's fall.[4]

In order to remove the City's immunity, Tenn. Code Ann. § 29-20-204(b) requires that the City have actual or constructive notice of the dangerous or defective condition. A succinct definition of "constructive notice" was set forth in *Hawks v. City of Westmoreland* as follows:

> "Constructive notice" has been defined by this Court as "'information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" *Kirby v. Macon County*, 892 S.W.2d 403, 409 (Tenn. 1994), quoting *Black's Law Dictionary,* 1062 (6th ed.1990). Applying that definition, a governmental entity will be charged with constructive notice of a fact or information, if the fact or information could have been discovered by reasonable diligence and the governmental entity had a duty to exercise reasonable diligence to inquire into the matter.

960 S.W.2d 10, 15 (Tenn. 1997); *see also Halliburton v. Town of Halls*, 295 S.W.3d 636, 640 (Tenn. Ct. App. 2008). In *Benn v. Public Bldg. Authority of Knox County*, the court stated, relative to proof of constructive notice:

> A plaintiff can establish constructive notice in one of three ways. First, a plaintiff may demonstrate that the owner or operator of the premises caused or created the condition. Second, if a third party caused or created the dangerous condition, a plaintiff may prove constructive notice by evidence that the condition "existed for a length of time" that the owner/occupier "in the exercise of reasonable care, should have become aware of that condition." Third, a plaintiff may show constructive notice by proving that "a pattern of conduct, recurring incident, or general continuing condition" caused the dangerous condition.

---

[3] "Whether a particular location is defective, dangerous or unsafe is a question of fact, which this court reviews with a presumption of correctness." *Benn v. Public Bldg. Authority of Knox County*, No. E2009-01083-COA-R3-CV, 2010 WL 2593932 at *3 (Tenn. Ct. App. June 28, 2010) (internal citation omitted).

[4] Our holding in this regard also addresses the City's contention that it retained its immunity under Tenn. Code Ann. §§ 29-20-203 and -204 because the bridge was not defective, unsafe or dangerous.

5

2010 WL 2593932, at *3 (Tenn. Ct. App. June 28, 2010) (internal citations omitted).

The City contends that it did not have constructive notice of the condition of the bridge. It argues that plaintiffs have not argued or alleged that the bridge was defective when first built, that a third party caused or created the dangerous condition, and that the Kees have not shown a pattern or conduct, prior accidents or complaints or other recurring incident with which to charge it with constructive notice.[5] We agree that the Kees have not argued or alleged that the bridge was defective when first built and there is no allegation or proof that a third party created the dangerous condition; consequently, consistent with *Benn*, we focus on the "common occurrence" theory.[6]

The court's findings relative to the frequency of the City's inspections of the bridge and the condition of the bridge on October 7, 2006, are supported by the testimony and exhibits. Andy Middleton, the City's supervisor of the fairgrounds on the date of Ms. Kee's fall, testified that his responsibilities included checking the bridge for loose nails or boards as he drove across it when he was working at the fairgrounds; that he and Jim Scott, another City employee, inspected the bridge after Ms. Kee's fall; and that he observed two nails "barely sticking [up]" on the bridge, which he hammered down. Jim Scott, building attendant for the City on the date of Ms. Kee's fall, testified that it was part of his responsibility to check the bridge for defects when he crossed it, either by walking or by riding a four wheel "Gator" vehicle. The photographs of the bridge show various conditions, including exposed nails, rotting or decayed wood, and the broken runner referenced by the trial court, which rendered the bridge dangerous and defective; the conditions are readily

---

[5] The Kees do not contend that the City had actual notice of the condition of the bridge.

[6] The common occurrence theory of liability was adopted by our Supreme Court in *Blair v. West Town Mall*:

> We take this opportunity to hold that in Tennessee, plaintiffs may prove that a premises owner had constructive notice of the presence of a dangerous condition by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence. This approach focuses directly on a principle firmly established in our case law—that a premises owner's duty to remedy a condition, not directly created by the owner, is based on that owner's actual or constructive knowledge of the existence of the condition. It simply recognizes the logical conclusion that, when a dangerous condition occurs regularly, the premises owner is on constructive notice of the condition's existence. This places a duty on that owner to take reasonable steps to remedy this commonly occurring dangerous condition.

130 S.W.3d 761, 765-66 (Tenn. 2004).

6

apparent and clearly support a determination that the City was on constructive notice of the same.[7]

## B. DUTY OWED PLAINTIFFS

The City argues that it owed no duty to the Kees. The nature of the duty owed by the owner of premises was set forth in *Green v. Roberts*:

> Duty, the first element of the claim, is the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm. . . . This duty is based upon the assumption that the owner has superior knowledge of any perilous condition that may exist on the property. The duty includes the obligation of the owner to maintain the premises in a reasonably safe condition, and to remove or warn against latent or hidden dangerous conditions of which the owner is aware or should be aware through the exercise of reasonable diligence. However, our Supreme Court has held that a duty may exist even where the injury-causing condition is alleged to be open and obvious to the plaintiff:
>
> > That a danger to the plaintiff was open and obvious does not, *ipso facto,* relieve a defendant of a duty of care. Instead, the

---

[7] The photographs also support a determination that the conditions had existed for a period of time sufficient to conclude that the City should have become aware of the condition, thereby establishing constructive notice. See *Blair*, 130 S.W.3d at 765 n. 1. Similarly, we note that in *Hawks*, our Supreme Court discussed constructive notice under Tenn. Code Ann. § 29-20-204 at some length and held that "a governmental entity will be charged with constructive notice of a fact or information, if the fact or information could have been discovered by reasonable diligence and the governmental entity had a duty to exercise reasonable diligence to inquire into the matter." *Hawks*, 960 S.W.2d at 15. The *Hawks* court affirmed the trial court's holding, affirmed by this court, that two fire hydrants near the plaintiffs' home were in a dangerous and defective condition and the city had constructive notice of the condition; in its discussion, the court concluded:

> Proof that a governmental entity failed to adequately inspect property or improvements which it owned or controlled is directly relevant to the question of whether it had constructive notice of the dangerous or defective condition resulting in injury. . . . Therefore, basing the finding of constructive notice in this case upon the plaintiffs' proof that the City failed to inspect the fire hydrants is not error.

*Id.* at 16. When considering the question of constructive notice, proof of the nature and/or adequacy of inspections of property or improvements can support a determination that a commonly occurring dangerous condition existed.

duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343(A)[8] relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if open and obvious, outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

\* \* \*

In essence, foreseeability is the gravamen of negligence. If the injury that occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant caused the injury, there is no negligence and no liability. "'The plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury.'"

398 S.W.3d 172, 177-78 (Tenn. Ct. App. 2012) (internal citations omitted).[9] In its argument, the City merges the question of the duty owed to Ms. Kee with its assertion that certain of her behavior was negligent. We believe, however, that Ms. Kee's actions are more appropriately considered with respect to the trial court's determination of her contributory negligence.[10]

---

[8] Restatement (Second) of Torts § 343A (1965) states:

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

[9] The court noted that "[w]hether a defendant owes a duty to a plaintiff in any given situation is a question of law for the court." 398 S.W.3d at 177.

[10] "[T]he initial focus is on whether a duty exists –'only after a duty is established does comparative fault come into play.'" *Green*, 398 S.W.3d at 177 (citation omitted).

8

The record in this case establishes that the City considered the bridge to constitute a potential danger to the public, inasmuch as employees were instructed to inspect the bridge when crossing it and to report conditions in need of repair; the inspections were, however, sporadic. The photographs showing the condition of the bridge two days after Ms. Kee's fall are evidence of the nature of the harm which could occur to persons who had to cross the bridge in going from the parking lot to the flea market.[11] That someone could fall on the bridge, due to the exposed nails and decaying wood, was reasonably foreseeable and there is no proof that the City took any measures to either address the condition, to warn of its existence, or to direct flea market patrons not to cross the bridge. The record supports the holding that the City owed a duty to Ms. McKee, as a patron of the flea market.

### C. FAULT ATTRIBUTED TO MS. KEE

With respect to the affirmative defense of comparative fault, the trial court held:

> The Court further finds that both parties were at fault. Mrs. Kee was at fault for not keeping an adequate lookout when walking across the bridge. In fact, her husband testified that she may have been looking over to the Fairgrounds when she fell. The City of Jackson is at fault for not inspecting the bridge on a regular basis and making sure that no nails or boards were protruding that might trip an invitee to the Fairgrounds.
>
> The Court has considered the factors set in *Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994). This Court has determined that the City of Jackson is sixty percent (60%) at fault in this case and Mrs. Kee is forty percent (40%) at fault.

The City contends that the evidence preponderates against the finding that Ms. Kee was not at least fifty percent at fault; it argues that Ms. Kee had superior knowledge of the bridge's condition, that there was an alternate course to take to get from the parking area to

---

[11] Mr. Kee testified that the overflow lot was available for patrons of the flea market:

A. Well, the main reason you park there [in the overflow lot], there's no available parking before you get there, you know. That's why they call the overflow because you're - - you fill up the parking spaces and then you pull across to the overflow parking.
Q. Okay. And in this particular instance when you parked at this area, how is it that you're able to get access to the flea market and to the fairgrounds? What route would you normally take from where you parked?
A. You - - you park on the grassy area, as I said, and then - - which is not marked off. And then you come to the bridge, a wood bridge, and you cross that bridge which is within 200 feet or so of the market itself.

the flea market, that Ms. Kee realized the risk but proceeded in spite of the same, and that she was inattentive as she walked across the bridge.

In *Eaton v. McLain* our Supreme Court instructed with reference to determining percentage of fault:

> In summary, the percentage of fault assigned to each party should be dependent upon all the circumstances of the case, including such factors as: (1) the relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth.

891 S.W.2d 587, 592 (Tenn. 1994) (internal citations omitted). The apportionment of fault is a question of fact, which the Court of Appeals reviews with a presumption of correctness. *Durham ex rel. Durham v. Noble*, No. M2011-01579-COA-R3-CV, 2012 WL 3041296, at *3 (Tenn. Ct. App. July 25, 2012) (citing *Hocker v. State*, No. E2008-02638-COA-R3-CV, 2009 WL 3518164, at *6 (Tenn. Ct. App. Oct.30, 2009); *Wilson v. Pickens*, 196 S.W.3d 138 (Tenn. Ct. App. 2005); *Lewis v. State*, 73 S.W.3d 88, 94–95 (Tenn. Ct. App. 2001)).

The concerns expressed by defendant largely reflect the affirmative defenses of assumption of risk and failure to keep a proper lookout that were elements of contributory negligence, a principle that was done away with when our Supreme Court adopted comparative negligence in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992). *See Green*, 398 S.W.3d at 178. The trial court appropriately considered Ms. Kee's actions and assigned 40% fault to her; affording that finding the presumption of correctness, we have determined that it is not inconsistent with the preponderance of the evidence.

### D. MEDICAL BILL FOR MS. KEE'S TREATMENT IN 2010

The City contends that the court erred in awarding $1,381.00 in damages for medical treatment Ms. Kee received in 2010. Upon review of the deposition of Dr. Jason Hutchinson, who rendered the treatment at issue, we agree that he did not affirm to a reasonable degree of medical certainty that the treatment was causally related to the injury Ms. Kee received when she fell; consequently, we reduce the award of damages by $1,381.00.

## III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed as modified.


_____
RICHARD H. DINKINS, JUDGE