IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 9, 2024 Session

**KERRY CLAY v. CITY OF MEMPHIS SANITATION DIVISION**

**Appeal from the Circuit Court for Shelby County**
**No. CT-001488-18    Felicia Corbin Johnson, Judge**

_____

**No. W2023-00519-COA-R3-CV**
_____

This suit was filed pursuant to the Tennessee Governmental Tort Liability Act.  The plaintiff was a home improvement contractor replacing a door at a client's home.  He discarded the old door, which was placed in a garbage truck allegedly owned and operated by the defendant.  The truck's compacting mechanism was engaged, causing the door to rise and strike the plaintiff in the head.  The plaintiff filed suit and was awarded damages based on injuries he suffered.  The defendant filed this appeal raising several issues.  Because we have determined that the evidence in the record does not preponderate against the findings of the trial court, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Joseph M. Fletcher, Memphis, Tennessee, for the appellant, City of Memphis.

John P. Wade, Memphis, Tennessee, for the appellee, Kerry Clay.

**MEMORANDUM OPINION[1]**

**I. FACTS & PROCEDURAL HISTORY**

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Mr. Kerry Clay is a home improvement contractor who performs various jobs at residential properties. On Friday, June 3, 2016, Mr. Clay was hired to replace a door for Ms. Sandra Bobo at her home located at 4344 Hawkeye Street, Memphis, Tennessee. Mr. Clay removed the original door from the home and placed it on the street next to Ms. Bobo's garbage bin so it would be collected by the City of Memphis Sanitation Division. Mr. Clay then returned to the home to install a replacement door. He realized that he had left an alarm sensor that he needed attached to the discarded door and went outside to retrieve it. As Mr. Clay was removing the sensor from the discarded door, a large truck arrived to collect the garbage from the property. One of the employees operating the garbage truck engaged Mr. Clay in conversation about some work he needed performed at his home. While this was happening, the discarded door was loaded into the compactor of the garbage truck. The compactor was activated, at which point, the door quickly rose and struck Mr. Clay in the head.

The individuals operating the truck asked Mr. Clay if he was okay, and Mr. Clay indicated that he was. He told them they could "[g]o ahead" at which point, the employees drove away. Mr. Clay returned to the home to finish hanging the door. Ms. Bobo saw a knot starting to form on Mr. Clay's head and encouraged him to report the incident to the City. Mr. Clay and another contractor present at the site drove around the area to try and find the garbage truck to discuss the knot on Mr. Clay's head. When they did not locate the truck, Mr. Clay called the City to report the incident and was told he would need to file a claim with their claims department. Later that day, Mr. Clay sought medical care at Regional One Medical Center. Although it is unclear from the record, some medical testing was completed, and the doctors told Mr. Clay that they did not detect any internal issues at that time. Mr. Clay initially sought to contact the City to seek compensation for the costs of that initial visit, but later, he began suffering from intense headaches. One week after the incident, Mr. Clay filed a complaint form with the City reporting that the incident had occurred. City representatives told him that someone would contact him regarding the incident. The City took the report, and while some investigative efforts appear to have been made, no crew was identified, and the incident was not investigated further. On the same day, Mr. Clay sought further medical treatment. He was ultimately referred to a neurologist at the Southern College of Optometry. He began attending doctor's appointments regularly to treat issues stemming from the injury.

Mr. Clay later sued the City pursuant to the Tennessee Governmental Tort Liability Act ("GTLA"). Mr. Clay initially filed the claim in the general sessions court of Shelby County, Tennessee, on May 25, 2017, for an amount less than $25,000. Later, Mr. Clay appealed to the trial court, on March 22, 2018. He moved for the amount in controversy to be increased to $250,000 and the motion was granted. Mr. Clay again moved for the amount in controversy to be increased to $300,000 in accordance with the limits on recovery set by the GTLA. This motion was also granted.

On January 25, 2023, six and one-half years after the incident, Mr. Clay's case went to trial. The trial court heard testimony from Mr. Phillip Davis of the City of Memphis Sanitation Division, Ms. Bobo, and Mr. Clay. It also considered two doctors' depositions and several exhibits, including those containing Mr. Clay's medical records. The two doctors were deposed regarding Mr. Clay's treatment and symptoms. Mr. Clay's medical records were attached as exhibits to those depositions. Mr. Clay testified as to the circumstances of the incident and the issues he has suffered since then. Mr. Clay stated that he was standing on the street speaking with one sanitation worker and had his back to the truck. He stated that another worker then took the door and that, while he did not see the man place it into the truck as he was turned around, the other worker must have placed it in the truck.[2] He testified that the compactor was then engaged, forcing the door to quickly rise up and strike him in the head. He stated that he has trouble remembering things such as calculations for carpentry projects and even the names of his grandchildren. Mr. Clay also testified as to the severity of his headaches. He stated that he wakes up with a headache every day and that the severity differs but if he does not take certain precautions, such as sleeping upright or wrapping his head at night, that the headache will be more severe. He also stated that he suffers headaches throughout the day, and that they can be triggered by light, loud sounds, and smells. He also testified that it has taken an emotional toll, making him want to "give up" and has also affected his relationship with his longtime girlfriend. When asked how often he deals with a headache Mr. Clay stated "Every day, all through the day. I mean, it's rarely [sic] that I don't have a headache. Headaches are always there, they're just real mild." His doctors were able to provide some measures to help control the symptoms, such as visual therapy and various pairs of sunglasses which filter out light.

Mr. Phillip Davis, whose title is Solid Waste Director, testified regarding efforts to identify the crew which would have been working with the truck in question on the date of the injury. He stated that the crew could not be located due to a lack of "timeliness" in reporting the incident one week after its occurrence. He stated that the City's route assignment system at the time consisted of one "scrap of paper" that listed crew members assigned to a particular truck and route on a given day. These assignments were not retained for record keeping purposes at the end of a day.

The trial court determined that the City's general tort immunity pursuant to the GTLA was removed based on the application of Tennessee Code Annotated section 29-20-205. This section abrogates a government entity's immunity where a negligent act or omission by one of its employees, within the scope of employment, caused injury to a

---

[2] The parties dispute whether Mr. Clay or one of the City employees loaded the door. There was contradicting testimony provided by Ms. Bobo and Mr. Clay regarding the issue. The trial court deemed Mr. Clay's testimony indicating that the City employee loaded the door to be more credible than Ms. Bobo's statement that Mr. Clay loaded the door.

plaintiff. Tenn. Code Ann. § 29-20-205. The City did not argue that any of the exceptional circumstances listed further in the statute applied so as to block the application of this statute.

The trial court determined that Mr. Clay was at no fault in the incident, that the garbage truck was owned and operated by the City, and that both the City and its employees were negligent so as to justify an award of damages. The trial court calculated $1,690,500 in total damages, comprising awards for past lost earnings, lost earning capacity, future and past pain and suffering, and past and future loss of enjoyment of life. The trial court applied the statutory cap applicable to cases brought pursuant to the GTLA and reduced the award to $300,000. The City filed this appeal April 10, 2023.

## II. ISSUES PRESENTED

The City presents a litany of issues for review. The issues presented in this case, which we have slightly restated, include:

1. Whether the trial court erred in determining Mr. Clay was less than 50 percent at fault.
2. Whether the trial court erred in ruling that Mr. Clay proved his case by a preponderance of the evidence.
3. Whether the trial court erred in determining Mr. Clay carried his burden of proof by a preponderance of the evidence and was entitled to a judgment for the City employee's negligent act in engaging a garbage compactor when Mr. Clay was standing near the back of the truck.
4. Whether the trial court erred in determining Mr. Clay established damages for pain and suffering, future pain and suffering, loss of earnings, and future loss of earning capacity.
5. Whether the trial court erred in determining that the unidentified individuals at the scene of the incident were employees of the City.
6. Whether the court erred in calculating the monetary awards made to Mr. Clay.
7. Whether the trial court erred in denying the City's motion for involuntary dismissal pursuant to Tennessee Rule of Civil Procedure 41.02.
8. Whether the trial court erred in admitting the deposition testimony and documentary evidence of Dr. Pritchard and Dr. Paul Harris, O.D. and whether the medical records contained in the testimony of Dr. Pritchard were properly authenticated and admissible as evidence.
9. Whether the trial court erred when it ruled that unidentified employees were acting in the course and scope of their duties when they loaded oversized construction material in violation of City of Memphis policy and City of Memphis Code of Ordinances.
10. If the trial court erred as stated in issue 9, was Mr. Clay guilty of negligence per se in failing to properly dispose of construction debris as required by the ordinance.

III. Discussion

The City raises several arguments regarding the factual findings made by the trial court. This appeal arises from a bench trial of a civil tort action. Thus, the standard of review in this case is *de novo* with a presumption of correctness as to the trial court's factual findings and those findings will be upheld "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We consider those issues properly presented in turn.

**(1) Whether the trial court erred in determining Mr. Clay was less than 50 percent at fault.**

The City argues that the trial court erred in assigning 0% of fault to Mr. Clay in its application of the doctrine of comparative fault. Comparative fault is a theory in tort in which the fault of a tortfeasor is compared to any fault attributable to the plaintiff. *Lewis v. State*, 73 S.W.3d 88, 94 (Tenn. Ct. App. 2001). "[I]n Tennessee, a plaintiff may 'recover so long as plaintiff's fault is less than the combined fault of all tortfeasors.'" *Binns v. Trader Joe's E., Inc*., 690 S.W.3d 241, 249 (Tenn. 2024) (quoting *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992)). In the present case, the trial court determined that Mr. Clay was 0% at fault for the incident.

Allocation of fault in bench trials is reviewed *de novo* with a presumption of correctness unless the evidence preponderates otherwise pursuant to Tennessee Rule of Appellate Procedure 13(d). *See Lindgren v. City of Johnson City*, 88 S.W.3d 581, 584 (Tenn. Ct. App. 2002). The City argues that the evidence presented shows that Mr. Clay was partially at fault for the harm he suffered based on a theory of negligence per se because he placed the door on the street for collection as normal solid waste. City of Memphis Code of Ordinances section 9-56-19 requires construction debris to be disposed of by means other than City garbage collection. The City argues that violation of the ordinance constituted a negligent act and contributed to any harm suffered by Mr. Clay.[3]

Negligence per se is a theory commonly used to establish that a party held a duty and breached that duty. Our Supreme Court has previously explained the doctrine of negligence per se as follows:

> The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence per se. "When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard of care ... from which it is negligence to deviate." *Prosser and*

---

[3] The trial court stated that it did not find Ms. Bobo at fault in this case as the owner of the site and the debris being disposed of. The City does not address that ruling in its brief.

*Keeton on Torts* § 36, p. 220 (5th ed.1984). In order to establish negligence per se, it must be shown that the statute violated was designed to impose a duty or prohibit an act for the benefit of a person or the public. It must also be established that the injured party was within the class of persons that the statute was meant to protect.

*Whaley v. Perkins*, 197 S.W.3d 665, 672 (Tenn. 2006) (quoting *Cook By and Through Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994) (citations omitted)). A party asserting negligence per se "must still establish causation in fact, legal cause, and damages." *Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003) (citations omitted).

The trial court made two findings when determining whether Mr. Clay was partially at fault. First, the trial court held that the ordinance did not apply to the debris Mr. Clay disposed of since it did not originate from a commercial site and thus, Mr. Clay was not guilty of negligence per se. Second, the trial court held that Mr. Clay could not be held at fault for placing the door at the road regardless of the interpretation of the ordinance. The trial court determined that the negligent acts of the City and its employees superseded any negligent act of Mr. Clay. The trial court held that the City employees "negligently failed to warn [Mr. Clay]" that he was standing in a dangerous area behind the truck when the compactor was engaged. It also held that the City "was negligent in failing to train or adequately supervise its employees" to prevent similar incidents. The trial court determined that the City worker loading the door was the proximate cause of the injury and superseded any negligent act of Mr. Clay.

The City's lone argument regarding the assignment of fault pertains to the trial court's interpretation of the ordinance. The City does not challenge the trial court's alternative finding that any negligent act of Mr. Clay was superseded by the negligent acts of the City and its employees. Previously, where a trial court has provided alternative bases for a decision and an appellant has only challenged one of those bases, this court has affirmed the ruling of the trial court without considering the single issue raised on appeal. *Smith v. Oakwood Subdivision Homeowners Ass'n, Inc.*, No. W2022-00845-COA-R3-CV, 2023 WL 8599720, at *13 (Tenn. Ct. App. Dec. 12, 2023); *Ramos v. Caldwell*, No. M2022-00222-COA-R3-CV, 2023 WL 1776243, at *3 (Tenn. Ct. App. Feb. 6, 2023). Because the trial court provided two independent bases for its ruling and the City challenged only one of those on appeal, we affirm the trial court's decision and do so without consideration of the issue.

**(2) Whether the trial court erred in ruling that Mr. Clay proved his case by a preponderance of the evidence.**

For this issue, the City appears to make a general challenge of the trial court's ruling that Mr. Clay had proven his claim by a preponderance of the evidence. The corresponding

- 6 -

section of the City's brief contains no arguments as to what evidence weighs against the trial court's findings and refers only to those "reasons set forth below." Tennessee Rule of Appellant Procedure 27(a)(7)(A) requires that an appellant's brief contain "contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record." Tenn. R. App. P. 27(a)(7)(A). An issue may be deemed waived, despite having been specifically raised in a party's brief, where the brief does not include an argument satisfying Rule 27(a)(7)(A). *See Sneed v. Board of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010). This Court is not tasked with researching or constructing a party's case or arguments. Where a party fails to develop an argument in support of his or her argument, or merely makes a skeletal argument, the issue is waived. *Sneed*, 301 S.W.3d at 615.

This section of the City's brief makes no argument regarding the issue presented other than to cite those "reasons set forth below." Because no proper argument is made, this issue is merely an assertion and therefore the issue is waived pursuant to Rule 27(a)(7)(A).

**(3) Whether the trial court erred in determining Mr. Clay carried his burden of proof by a preponderance of the evidence and was entitled to a judgment for the City employee's negligent act in engaging a garbage compactor when Mr. Clay was standing near the back of the truck.**

The City next argues that the trial court erred in determining that Mr. Clay met his burden of proof in showing that City employees were negligent in activating the compactor when Mr. Clay was in the area behind the compactor. This could be interpreted as a challenge of both the findings that the act of engaging the trash compactor while Mr. Clay stood behind it was negligence and the failure to warn Mr. Clay was negligence.

As stated above, Tennessee Rule of Appellant Procedure 27(a)(7)(A) requires that an appellant's brief contain "contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record." *Id*. An issue may be deemed waived, despite having been specifically raised in a party's brief, where the brief does not include an argument satisfying Rule 27(a)(7)(A). *Sneed*, 301 S.W.3d at 615.

Here, the City has made no argument as to why either of these findings of the trial court were incorrect. The issues are not expounded on in a designated section in the brief and are only referenced in the issue statement. There are no citations or facts referenced asserting how the evidence preponderates against the findings of the trial court. As such, the appellant has failed to argue this issue in a way that moves it outside of the realm of a mere assertion. Therefore, the issue is waived.

**(4) Whether the trial court erred in determining Mr. Clay established damages for pain and suffering, future pain and suffering, loss of earnings, and future loss of earning capacity.**

The City argues that there is a lack of proof regarding the damages awarded by the trial court to Mr. Clay. The City argues that both the economic and non-economic damages awarded by the trial court were excessive and unfounded. Because this case was brought pursuant to the GTLA, a statutory cap on damages applies to cases in which a person suffers bodily injury or death. Tenn. Code Ann. § 29-20-403(b)(1)(A). That cap, as recognized by the trial court, is set at $300,000 and the City will be immune from any damages awarded in excess of the cap. *Id.*

Pain and suffering damages are a form of non-economic damages which encompass "the physical and mental discomfort caused by an injury." *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 715 (Tenn. Ct. App. 1999). These damages include many of the mental and emotional responses which traditionally accompany pain, including things, "such as, anguish, distress, fear, humiliation, grief, shame, or worry." *Id.* (internal citations omitted). "The amount of damages is a question of fact." *Lexon Ins. Co. v. Windhaven Shores, Inc.*, 601 S.W.3d 332, 341 (Tenn. Ct. App. 2019). Pain and suffering damages "are not easily quantified and do not lend themselves to easy valuation" and accordingly, these calculations are "left to the sound discretion of the jury or the judicial finder-of-fact." *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 210-11 (Tenn. Ct. App. 2008).

Here, the trial court made its past pain and suffering calculation based on the amount of time Mr. Clay suffered a headache, on average, per day, for the 6.5-year period between the injury and the trial. The court set the rate at $100 per hour suffered, and set the time suffered at 3 hours per day at 365 days per year for the 6.5-year period. This totaled an amount of $711,750. This total exceeds the GTLA cap on damages of $300,000. Tenn. Code Ann. § 29-20-403(b)(1)(A). The City claims that the award was arbitrary and an abuse of discretion as it was, "baseless and clearly excessive" and made "without any supporting medical proof of the injuries."

There is evidence contained in the record to support the claim that Mr. Clay has endured intense pain and suffering after being hit with the door. Mr. Clay testified that he wakes up with a headache every day. He testified as to a sleeping arrangement intended to mitigate the pain. He stated that he sleeps sitting up, with a scarf tied around his head and pain medication by his bed to help mitigate the pain. He also has a great sensitivity to light, sound, and smells which trigger additional headaches. Further, the depositions of Mr. Clay's doctors and the attached exhibits concern the daily pain suffered by Mr. Clay, the effects the pain has had on his life, and some of the steps taken to mitigate the pain. Mr. Clay and his longtime girlfriend, Ms. Faust, both testified to the change in Mr. Clay's emotional state and the personal issues with which he has had to deal with due to the

headaches and constant pain. The trial court stated in its final order that it found all of this proof to be credible and convincing in making its calculation.

The City does not point to any evidence in the record preponderating against the trial court's finding. The trial court made findings regarding calculations of Mr. Clay's claim for pain and suffering. The trial court also highlighted the testimony, depositions, and exhibits upon which it made its decision. The City does not raise an alternative measure of damages or any other authority which would suggest the trial court's award was excessive. The City does not argue that the pain and suffering did not occur. The City does not cite any pain and suffering awards in other cases for comparable injuries that were lower than the award made by the trial court in this case. The trial court properly applied the GTLA cap to damages in this case and no one has disputed the applicability of the GTLA in this matter. The GTLA caps the amount of damages to be recovered against government entities in tort actions at $300,000. Tenn. Code Ann. § 29-20-403(b)(1)(A).

Here, the evidence does not preponderate against the findings of the trial court regarding the past pain and suffering of Mr. Clay so as to justify an award of $300,000. Any damages in excess of $300,000 are pretermitted as they are irrelevant after the application of the GTLA cap.

**(5) Whether the trial court erred in determining that the unidentified individuals at the scene of the incident were employees of the City.**

The City claims that the trial court erred in finding that the individuals present at the scene of the incident were employees of the City. "To find that evidence preponderates against a trial court's finding of fact, we must determine that the evidence supports another finding 'with greater convincing effect.'" *DeLany v. Kriger*, 671 S.W. 3d 548, 553 (Tenn. Ct. App. 2019) (quoting *C-Wood Lumber Co., Inc. v. Wayne Cnty. Bank*, 233 S.W.3d 263, 272 (Tenn. Ct. App. 2007)).

The City presents two arguments as to why the evidence preponderates against the finding that the individuals present at the incident were employees of the City. First, the City argues that no person testified directly that the truck present at the incident held the City of Memphis insignia and identification number present on all City trucks so as to prove that the truck was owned and operated by the City. Second, the City argues that the individuals were not identified as City sanitation employees as there was no testimony that they were dressed in the proper uniforms. City sanitation workers are required to wear specific uniforms when on the job and can be disciplined for not doing so.

A vast amount of circumstantial evidence was provided indicating that the truck present at the time of the incident was a truck owned and operated by the City. Evidence was entered showing that the house in question was on a garbage collection route serviced by the City and that the date of the incident, June 3, 2016, was a collection day for this

route. Mr. Davis also testified that 4344 Hawkeye was not on a route serviced by a third-party collector contracting with the City and that it was only serviced by City-owned and operated trucks. Mr. Davis further stated that any trucks working for a contractor would be red, blue, or green in color, differing from the City trucks. Mr. Davis also testified that, to his knowledge, crews contracted with the City will not stop to collect garbage at sites that are not on their assigned route since they do not get paid to do so. When asked whether it was more likely than not that the truck present at the incident was one owned and operated by the City, Mr. Davis stated, "[m]ore likely than not, it was." Mr. Clay stated that the truck present at the incident was a tan colored truck with an open rear end and front attachment for shoveling debris. Mr. Clay said he did not notice any City's insignias or markings on the truck, but that he was not looking specifically for those marks as he was focused on getting the sensor out of the door. Finally, Mr. Clay testified that his home had been serviced by Memphis City trucks since 1976 and that the truck he saw that day was the "[s]ame old tan truck" that ran every week. In its ruling, the trial court considered all the facts and circumstances and determined that the truck was a City of Memphis truck. We do not find any evidence presented that would establish with greater convincing effect that the truck at the scene of the incident was not owned and operated by the City. As such, we will not disturb this finding of the trial court.

As for those individuals present at the incident, the City relies on this Court's opinion in *Wimmer v. Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System*, 559 S.W.3d 448 (Tenn. Ct. App. 2018). There, this Court determined that the evidence was too speculative to support a finding that a person was employed by the defendant hospital. In that case, the only proof of employment was testimony from the plaintiff that she believed the person was an employee because he was wearing scrubs. *Id.* at 458. This Court stated that the record in *Wimmer* was "devoid of evidence supporting a finding of removal of immunity pursuant to Tenn. Code Ann. § 29-20-202 or Tenn. Code Ann. § 29-20-205." *Id.* The City claims that the only evidence offered to prove that the individuals present at the incident were employees of the City was that they were operating a garbage truck. The City argues this evidence is too speculative to support a finding that the individuals were employees of the City, and thus that GTLA immunity is not waived.

Here, the trial court determined that there was enough evidence provided by Mr. Clay to establish that the individuals present at the incident were, more likely than not, employees of the City. Mr. Clay indicated in his deposition that the individuals were not wearing uniforms. When Mr. Clay was asked about this testimony in court and whether individuals on the truck were wearing the pants and shirts described as the uniform of City sanitation workers he said, "I doubt it . . . I couldn't tell you yes or no." However, he also stated that he did believe the individuals were employees of the City because they were the ones operating the City's garbage truck. As stated above, the trial court first determined that it was more likely than not a City of Memphis truck on the route. The trial court then determined that because it was a City truck, this imparted credibility to a finding that the

persons operating the truck were City employees. The circumstances here differ from those in *Wimmer*.

In *Wimmer*, this Court determined the only fact to support a finding that the individual was an employee of the government entity was that the plaintiff believed the individual was an employee of the hospital because the individual was wearing scrubs. *Wimmer*, 559 S.W.3d at 458. Here, there are additional facts and circumstances which support the finding that the individuals present were employees of the City. First, the individuals were operating what was determined to be a City-owned and operated truck. That indicates that a person riding on the truck would likely be an employee of the City because they employ crews to operate the trucks. Further, the fact that the City was scheduled to collect garbage from this specific property on this specific date lends credibility to the finding that persons at the property for the purpose of collecting garbage would be employees of the City. Mr. Davis also testified that, to his knowledge, individuals do not drive around gratuitously collecting garbage, indicating that an individual present at the incident collecting garbage would only be there on behalf of someone paying them to do so. The City does not present an alternative theory of who would have been operating the truck instead of its employees.

Having reviewed the record, we find that there was no evidence contained within the record supporting alternative findings with greater convincing effect. Therefore, the evidence presented in the case does not preponderate against the findings that the individuals were City of Memphis employees and that the truck was owned by the City of Memphis. Accordingly, we affirm the trial court's findings that the truck in question was owned by the City and operated by its employees.

**(6) Whether the court erred in calculating the monetary awards made to Mr. Clay.**

We have already determined above that the trial court acted properly in awarding damages to Mr. Clay in excess of the statutory cap to which the government may be held liable in actions brought pursuant to the GTLA. Tenn. Code Ann. § 29-20-403(b)(A)(1). Therefore, this issue concerning the damages awarded to the appellee is pretermitted.

**(7) Whether the trial court erred in denying the City's motion for involuntary dismissal pursuant to Tennessee Rule of Civil Procedure 41.02.**

The City next argues that the trial court erred in denying its motion for involuntary dismissal made pursuant to Tennessee Rule of Civil Procedure 41.02. A motion for involuntary dismissal is a prejudgment motion made for dismissal of a claim.[4] Tenn. R.

---

[4] Rule 41.02(2) motions are typically made at the conclusion of the plaintiff's proof. Here, the sole witness for the City testified out of order, prior to any presentation of proof by the plaintiff. Thus, the motion was not made until after the conclusion of all proof.

- 11 -

Civ. P. 41.02. A Rule 41.02 motion should be granted where the plaintiff has failed to present the necessary evidence to prove each element of a claim by the preponderance of the evidence so as to show a right to relief. *Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007). "The standard of review of a trial court's decision to grant a Rule 41.02 involuntary dismissal is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure." *Id*. (citing *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991)). Thus, the standard of review is *de novo* with a presumption of correctness as to the trial court's factual findings "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d).

Here, the City claims that Mr. Clay failed to establish the elements of his GTLA claim for three reasons. The City argues that (1) Mr. Clay failed to prove that the truck present on the day of the incident was a garbage truck owned and operated by the City of Memphis Sanitation Division, (2) that Mr. Clay failed to prove that the individuals present at the incident were City employees, and (3) that Mr. Clay failed to prove that these individuals were the persons who loaded the door into the trash compactor and then engaged the compacting mechanism.

Above, we determined that the evidence did not preponderate against the trial court's factual findings that the vehicle present at the incident was a City of Memphis garbage truck and that the individuals present were employees of the City. Having already addressed those arguments, we now consider only whether the trial court erred in not granting the City's motion for involuntary dismissal solely based on whether there was a showing that the City employees placed the door into the compactor and subsequently engaged the mechanism.

The City argues that Mr. Clay has failed to prove by a preponderance of the evidence that the employees of the City loaded the door into the compactor on the back of the truck and engaged the compacting mechanism so as to cause the door to eject from the truck and strike Mr. Clay. Although not discussed in great detail within the brief, it appears that the City is arguing that Mr. Clay has failed to establish that any City employee committed a negligent act so as to remove governmental immunity pursuant to Tennessee Code Annotated § 29-20-205.

The City relies on the testimony of Ms. Bobo to support its argument that the employees did not load the door into the compactor. Ms. Bobo testified that she did not witness the incident, but that Mr. Clay told her and her husband what happened when he returned to the home. When asked if something had happened to Mr. Clay that day Ms. Bobo testified that, "Yes, [Mr. Clay] put the door in the garbage truck and somehow he got hit . . . by the door in the back of the truck." The City argues that Ms. Bobo's testimony shows that Mr. Clay, rather than an employee of the City, placed the door into the compactor. The City argues that failure to prove that a City employee placed the door in

- 12 -

the compactor was tantamount to failure to prove all the necessary elements of the GTLA claim.

Mr. Clay testified that he was not the one who loaded the door, but rather a person who was part of the City garbage collection crew loaded the door and then activated the compactor without any warning. In its findings, the trial court determined that Mr. Clay's testimony on this issue was more credible than Ms. Bobo's and thus found that a City employee placed the door into the truck. The trial court also determined that the evidence favored a finding that the City of Memphis employee activated the compactor, causing the door to eject and hit Mr. Clay in the head.

The City has failed to provide an alternative set of facts better supported by the evidence. The only evidence supporting the contention that Mr. Clay placed the door in the compactor was Ms. Bobo's testimony. This evidence was contradicted by Mr. Clay's testimony that he neither placed the door in the compactor nor directed the City workers to do so. When asked about Ms. Bobo's testimony, Mr. Clay denied that he had told her he placed the door in the compactor. There are several facts contained in the record to support the trial court's decision to deem Mr. Clay's testimony on this issue more credible than Ms. Bobo's. First and foremost, Ms. Bobo did not actually witness the incident whereas Mr. Clay personally experienced the incident. Ms. Bobo only testified as to what she believed Mr. Clay said he experienced when returning to the house and that a knot was present on his head after he had been struck by the door that was not present when he arrived that morning. Further, the incident occurred six and one-half years prior to Ms. Bobo giving her testimony and there is no indication she was ever asked to speak on the issue before being asked to testify.

The only evidence regarding who activated the compactor comes from the testimony of Mr. Clay. Mr. Clay stated that he was standing on the street speaking with one sanitation worker and that at that time another worker came from the other side of the truck and placed some bags of trash into the truck. He stated that the worker then took the door, which was propped against his leg. Although he did not see the worker place the door into the truck because his back was turned, he believed that was what had happened. It was logical of Mr. Clay to presume that the person who engaged the compactor would have been one of the City workers as they were responsible for operating it, and the City offered no alternative. There is nothing in the record to suggest that an individual other than the City employee engaged the compactor. Thus, the weight of the evidence does not suggest that the trial court erred in making its factual findings.

Further, in its final judgment, the trial court stated that even if Mr. Clay had been the one to place the door into the compactor, that the actions of the employees would have been a superseding cause of any injury and thus Mr. Clay was not at fault. The trial court held that the City employees were responsible for operating the truck safely regardless of whether they loaded the door or allowed Mr. Clay to do so. The trial court also held that

the City failed to properly train the employees on what type of debris was allowed to be loaded into the compactor, how to properly load debris, and on the risk of improperly loaded debris causing injury to bystanders. Even if we concluded that Mr. Clay loaded the door into the compactor, the trial court's findings would still be affirmed because the City has failed to address this alternative basis of ruling provided by the trial court.

Because none of the findings upon which the trial court relied when denying the motion for involuntary dismissal have been shown to be against the preponderance of the evidence, we find no error and affirm the denial of the motion for involuntary dismissal.

**(8) Whether the trial court erred in admitting the deposition testimony and documentary evidence of Dr. Pritchard and Dr. Paul Harris, O.D. and whether the medical records contained in the testimony of Dr. Pritchard were properly authenticated and admissible as evidence.**

The City next argues that the trial court erred in its decision to admit the depositions of Dr. David Pritchard and Dr. Paul Harris. Because the depositions were purportedly entered into evidence at the same time, we will take them up in concert. The City argues that the depositions were not properly admitted into evidence and as such, both the depositions and any exhibits attached to the depositions, including medical records of Mr. Clay, were improperly considered by the trial court.

For a party to raise an issue on appeal pertaining to the admissibility of evidence, the party must have objected to the admission of the evidence in a timely fashion and stated a specific basis for the objection. *Levine v. March*, 266 S.W.3d 426, 440 (Tenn. Ct. App. 2007); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 702 (Tenn. Ct. App. 1999). Tennessee Rule of Appellate Procedure 36(a) prevents a party from obtaining relief on appeal where the party "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a); *Levine*, 266 S.W.3d at 440. Thus, failure "to make an appropriate and timely objection to the admission of evidence in the trial court prevents a litigant from challenging the admission of the evidence on appeal." *Levine*, 266 S.W.3d at 440 (additional citations omitted). The admissibility of evidence is an issue within the discretion of the trial court, and those decisions are "overturned on appeal only when there has been abuse of discretion." *Crotty v. Flora*, 676 S.W.3d 589, 607 (Tenn. 2023) (citing *Borne v. Celadon Trucking Servs. Inc.*, 532 S.W.3d 274, 294 (Tenn. 2017)).

Depositions may be entered into evidence in several ways. One method is that a deposition "may simply be handed to the Judge for his reading if the Judge happens to be the trier of facts." *Campbell Cnty. Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457, 463-64 (Tenn. Ct. App. 1984). In the present case, Mr. Clay's counsel provided the depositions to the court clerk prior to the trial. During the trial, Mr. Clay's counsel asked in open court for the trial court to state in the record that it had read the depositions.

Counsel had already provided the depositions and then handed the attached exhibits to the judge. The trial judge then called for a recess specifically to go into chambers to read the depositions and exhibits into evidence. All of this occurred in the presence of the City's counsel and no objection was raised. The trial court then relied on the depositions when ruling on the issues. The City indicates that the depositions themselves reserved all objections to be raised in court but that since they were never presented as evidence the City was never afforded the opportunity to object. We find this unconvincing. The City could have raised any issues with the depositions and the attached exhibits when they were being handed to the trial court or when the trial court judge called a recess to go read the depositions in chambers. At that point, the trial court could have assessed any issues and determined whether the depositions and exhibits were admissible.

Further, during its closing statement, counsel for Mr. Clay referenced the depositions of both Dr. Harris and Dr. Pritchard and discussed some of the injuries, treatments, and observations made by the doctors. At one point, counsel for Mr. Clay even stated that there had been no objections made to any of the deposition testimony or any of the attached exhibits and that all should be considered part of the evidence. At no point did the City's counsel object. In the City's closing statement, counsel stated, "We're not really contesting the medical proof[.]" All the medical proof derived from this case would originate from the depositions and attached exhibits.

There does appear to have been some confusion as these items were not contained in the original record for this appeal and the record had to be supplemented. The City's counsel seems to have believed that only a small summary of the evidence was being offered for review rather than the entirety of the depositions and their records. Even if that had been the case, an objection should have been raised. At trial, Mr. Clay's counsel made it clear that they were offering a small index to aid in review of the records, not in lieu of the records. Counsel also made it clear that it intended to move all the depositions and the attached exhibits into evidence at trial. The trial court was also clear that it intended to rely on the evidence and intended the evidence be admitted as part of the record.

Even if there had been a misunderstanding about what was being offered as evidence when the depositions and exhibits were handed to the judge, the City's counsel should have still realized what had happened after the reading occurred. When the recess ended, the trial court judge returned to court and stated that she had reviewed the depositions. This should have made it obvious that the depositions were being considered as evidence by the factfinder and that any objection to their admissibility should have been raised. The City's counsel failed to do so.

During its ruling, the court again referenced testimony that had been taken by deposition and indicated that it was going to be considered just as if the testimony came from a witness in open court. She even mentioned the doctors specifically. There was

never any objection or any other statement from the City's counsel pertaining to any issues existing with the depositions or the exhibits.

Because the City failed to raise any objections as to the admissibility or use of the depositions and other evidence at issue and was presented with several opportunities to do so, those objections were waived pursuant to Tenn. R. App. P. 36(a).

**(9) Whether the trial court erred when it ruled that unidentified employees were acting in the course and scope of their duties when they loaded oversized construction material in violation of City of Memphis policy and City of Memphis Code of Ordinances.**

The City argues that the trial court erred when it ruled that the City's employees were acting within the scope of their duties so as to waive immunity under the GTLA. Tenn. Code. Ann. § 29-20-205. As stated above, an issue may be deemed waived, despite having been specifically raised in a party's brief, where the brief does not include an argument satisfying Tenn. R. App. P. 27(a)(7)(A). *Sneed*, 301 S.W.3d at 615. The City's brief only states this issue in its statement of the issues. There is no corresponding argument section later in the brief. There is also no reference to this argument made in a separate section of the brief. Thus, the City has not properly supported this claim with the necessary arguments and citations needed to make this argument anything more than an assertion. Therefore, the issue is hereby waived.

**(10) If the trial court erred as stated in issue 9, was Mr. Clay guilty of negligence per se in failing to properly dispose of construction debris as required by the ordinance.**

The City finally argues that the employees of the City of Memphis Sanitation Division were acting outside the scope of their duties since they did not have discretion to pick up construction debris and that Mr. Clay is guilty of negligence per se. This issue was expressly conditioned on a finding of error on the issue of whether the employees were acting within the scope of their duties. We have determined that a full argument was not made on that issue and thus deemed the argument to be waived. Since we have deemed that argument to be waived, this issue is pretermitted.

## IV. CONCLUSION

Having carefully reviewed the record and the issues raised by the appellant, we find no error. Therefore, we affirm the ruling of the trial court in its entirety. Costs of this appeal are taxed to the appellant, City of Memphis Sanitation Division, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE